1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | Case No.: 2:07-cv-1468-RLH-LRL |
| | ) | |
| Plaintiff, | ) | **O R D E R** |
| | ) | |
| vs. | ) | (Motion for Summary Judgment–#15; |
| | ) | Countermotion for Summary |
| DAVID SCOTT GITTINGS, deceased, by and | ) | Judgment–#19) |
| through MARY L. COOKE and LINDEN P. | ) | |
| GITTINGS, the natural parents and Special Co- | ) | |
| Administrators of the Estate of DAVID SCOTT | ) | |
| GITTINGS, and NICHOLAS S. MARIANI, an | ) | |
| individual, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

        Before the Court is Plaintiff Allstate Insurance Company's ("Allstate") **Motion for**

**Summary Judgment** (#15), filed June 16, 2008.  The Court has also considered Defendants Mary

L. Cooke ("Cooke") and Linden P. Gittings' ("Linden Gittings") Opposition (#18), filed July 2,

2008, and Allstate's Reply (#21), filed July 9, 2008.

        Also before the Court is Cooke and Linden Gittings' **Countermotion for**

**Summary Judgment** (#19), filed July 7, 2008, and Allstate's Opposition (#22), filed July 16,

2008.  To date, no Reply has been filed.

1

AO 72
(Rev. 8/82)

1        **BACKGROUND**

2        In the early morning hours of July 31, 2005, David Gittings ("Gittings"), Nicholas

3    Mariani ("Mariani"), Brian Kendall ("Kendall"), Tammy Caudell ("Caudell"), and Autumn Isi

4    ("Isi") were traveling in Gittings' Jeep hunting jackrabbits near Searchlight, Nevada.  Gittings was

5    driving and Mariani was sitting in the front passenger seat with a loaded shotgun resting between

6    his legs.  While driving through the desert, Gittings spotted a rabbit and stopped the vehicle to

7    pursue the rabbit on foot.  Gittings and Kendall got out of the Jeep, while Mariani, Caudell, and Isi

8    remained in the vehicle.  When Gittings left the vehicle, Mariani moved the loaded shotgun from

9    between his legs and placed it on the driver's seat of the Jeep.  A short time later, Gittings and

10   Kendall returned to the vehicle.  As Gittings climbed back into the vehicle, Mariani picked up his

11   shotgun so Gittings would not sit on the gun.  While moving the gun, Mariani brought the barrel of

12   it across Gittings' body and accidentally fired a shot that hit Gittings in the back of the neck and

13   head, killing him.

14       The State of Nevada brought second-degree murder charges against Mariani.

15   However, on August 8, 2005, Mariani pled guilty to involuntary manslaughter and other criminal

16   charges.  Mariani received a suspended sentence requiring two years of community service and

17   restitution to the Gittings' family.

18       At all relevant times Mariani was insured under an Allstate Indemnity Deluxe Plus

19   Homeowners Policy ("Policy").  Mariani's Policy contains the following pertinent language: "[w]e

20   do not cover any bodily injury or property damage intended by, or which may reasonably be

21   expected to result from the intentional or criminal acts or omissions of, any insured person."  (Dkt.

22   #15, Allstate's Mot. Ex. B ("Policy") 19.)  Allstate filed the instant action for declaratory relief to

23   determine whether its Policy covers Mariani for his potential liability and, thus, whether Allstate is

24   obligated to defend and indemnify Mariani.

25       Allstate now moves the Court to grant its Motion for Summary Judgment,

26   contending that the language of the Policy relieves it of any liability connected with Mariani's

AO 72
(Rev. 8/82)

1    unintentional shooting of Gittings.  Cooke and Linden Gittings, the parents and co-administrators

2    of the estate of Gittings, disagree and have filed a Countermotion for Summary Judgment,

3    asserting that Allstate is liable because the shooting was accidental and therefore the exclusionary

4    language of the Policy does not apply.  For the following reasons, the Court grants Allstate's

5    Motion and denies Cooke and Linden Gittings' Countermotion.

**DISCUSSION**

6

7    **I.  Summary Judgment Standard**

8           Summary judgment is proper when "the pleadings, the discovery and disclosure

9    materials on file, and any affidavits show that there is no genuine issue as to any material fact and

10   that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is

11   "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find

12   for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit

13   under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party

14   moving for summary judgment has the burden of showing the absence of a genuine issue of

15   material fact, and the court must view all facts and draw all inferences in the light most favorable

16   to the non-moving party.  *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1148 (D. Nev. 2005).

17          In response to a properly submitted summary judgment motion, the burden shifts to

18   the opposing party to set forth specific facts showing that there is a genuine issue for trial.

19   *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002).  The non-moving party

20   "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or

21   admissible discovery material, to show that the dispute exists."  *Bhan v. NME Hosps., Inc.*, 929

22   F.2d 1404, 1409 (9th Cir. 1991).

23          When parties file countermotions for summary judgment, the court must consider

24   each party's motion separately to determine whether any genuine issue of material fact exists and

25   whether that party is entitled to a judgment under Rule 56.  *W. Land Exch. Project v. U.S. Bureau*

26   *of Land Mgmt.*, 315 F. Supp. 2d 1068, 1075 (D. Nev. 2004).  "In making these determinations, the

AO 72
(Rev. 8/82)

1  court must evaluate the evidence offered in support of each cross-motion." *Id.* (citing *Fair Hous.*

2  *Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001)).

3      A federal court, sitting in diversity must construe insurance policies as the state

4  would if presented the same question. *Fortis Benefits Ins. Co. v. Johnson*, 966 F. Supp. 987,

5  989–990 (D. Nev. 1997).  Under Nevada law, insurance policies are interpreted broadly to provide

6  the "greatest possible coverage to the insured." *Capitol Indem. Corp. v. Wright*, 341 F. Supp. 2d

7  1152, 1156 (D. Nev. 2004).  Additionally, any ambiguity in the insurance contract must be

8  interpreted in favor of the insured. *Id.*  But, if the language is unambiguous, the court will not

9  increase the legal obligations of the insurer by rewriting contract provisions. *Senteney v. Fire Ins.*

10  *Exch.*, 707 P.2d 1149, 1150 (Nev. 1985).  Lastly, in Nevada, "an action for declaratory relief

11  seeking the interpretation of an insurance policy generally presents a question of law that may be

12  determined on a motion for summary judgment." *Ins. Corp. of Am. v. Rubin*, 818 P.2d 389, 390

13  (Nev. 1991).

14  **II.  Allstate's Motion for Summary Judgment**

15      In order for Allstate to obtain declaratory relief in the instant manner, the injuries

16  Gittings sustained must either (1) not be covered under the Policy, or (2) if the injuries are

17  covered, the language of the Policy must unambiguously exclude coverage.

18      Here, the Policy covers the injuries Gittings sustained from the unintentional

19  shooting.  The section of the Policy that subjects Allstate to potential liability states that "Allstate

20  will pay damages which an insured person becomes legally obligated to pay because of bodily

21  injury . . . arising from an occurrence." (Policy 19.)  The Policy defines "occurrence" as "an

22  accident . . . resulting in bodily injury." (*Id.* at 3.)  Under this unambiguous language, Allstate is

23  subjected to potential liability because the parties do not dispute that Mariani was an insured

24  person, or that the unintentional shooting was an accident.

25  //

26  //

AO 72
(Rev. 8/82)

**A. The Scope of Allstate's Homeowners Policy**

 If the occurrence is excluded by a provision within the Policy, Allstate does not have to provide coverage. The Policy specifically excludes coverage for "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." (*Id.* at 19.)

There is no reported Nevada case interpreting the language of Allstate's intentional or criminal acts exclusion ("Exclusion"). Therefore, the Court uses its best judgment to predict how the Supreme Court of Nevada would decide this issue, *see GMC v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993), by using the well-reasoned decisions from other jurisdictions as guidance, *see In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990).

In the instant matter, Allstate argues that the language of the Exclusion is unambiguous and, because Mariani was charged with a criminal act, the Exclusion automatically applies to deny coverage. However, Cooke and Linden Gittings correctly assert that the Court must engage a two-pronged test to determine whether the Exclusion is applicable. The occurrence is not covered if (1) the insured acted either intentionally or criminally, and (2) the resulting injuries were the intent or reasonably expected result of the insured's intentional or criminal act.

*1. Intentional or Criminal Acts*

The language in the Exclusion unambiguously states that bodily injuries are not covered if they "may reasonably be expected to result from the intentional or criminal acts . . . of, any insured person." (Policy 19.) Allstate is free, of course, to write a contract that excludes all criminal acts, however, the instant Policy only excludes reasonably foreseeable harm from criminal acts. The parties may disagree on the interpretation of the Exclusion, but that does not mean that the language is ambiguous. *See Potter v. Ranger Ins. Co.*, 732 F.2d 742, 743 (9th Cir. 1984). This Court has interpreted an identical "intentional or criminal acts" exclusion and found that the criminal acts in that case barred coverage. *See Allstate Ins. Co. v. Bruttig*, No. (2:05-cv-1257-RCJ-PAL), 2006 WL 3248393, at *3 (D. Nev. Nov. 2, 2006). In *Bruttig*, a man assaulted

5

1   another man after the two got in a car accident. *Id.* at *1.  The assaulted man suffered several

2   injuries, including a broken hip. *Id.*  The attacker was convicted of "Battery with Substantial

3   Bodily Harm." *Id.*  The Court reasoned that the attacker's intent did not matter, because the

4   criminal offense was sufficient to trigger the exclusion. *Id.* at *3.

5        Allstate misinterprets *Bruttig* to argue that it is unnecessary to apply the reasonably

6   expected standard to criminal acts.  However if *any* criminal offense excluded coverage, as

7   Allstate suggests, the modifying phrase "which may reasonably be expected to result from," would

8   be meaningless in relation to criminal acts.  Moreover, the facts of *Bruttig* are much different than

9   the facts of the instant case.  In *Bruttig*, the attacker brutally and repeatedly struck the victim and

10  was convicted of battery.  Therefore, considering the brutal nature of the crime, the Court naturally

11  reasoned that the criminal act alone excluded coverage.  Notably however, *Bruttig* also applied the

12  reasonably expected standard in analyzing the intentional nature of the attacker's acts and held that

13  "a reasonable person would expect [the victim's] damages to result from [the attacker's] violent

14  behavior." *Id.* at *4.  Thus, *Bruttig* found the victim's bodily injuries to be reasonably expected

15  whether the attacker's acts were criminal or intentional.

16       In the instant case, Mariani's acts were unintentional and Mariani pled guilty to

17  involuntary manslaughter.  Even though acts can be criminal whether intentional or unintentional,

18  *see, e.g.*, *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1247 (Wash. 1997) ("criminal acts" includes

19  intentional and unintentional acts), the intent of the crime is still helpful in determining whether

20  bodily injury "may reasonably be expected to result" from the criminal acts of the insured.

21  Therefore, the Court finds that the plain language of the Exclusion requires that any bodily injuries

22  resulting from a criminal act must be reasonably expected.  Accordingly, the Court addresses

23  whether death may reasonably be expected from these criminal acts.

24       *2. Reasonably Expected Results*

25       Allstate urges the Court to apply an objective standard to what may reasonably be

26  expected from Mariani's criminal acts, while Cooke and Linden Gittings urge the Court to apply a

6

1    subjective standard.  Several well-reasoned decisions from various jurisdictions, including this

2    jurisdiction, have concluded that "intentional or criminal acts" exclusions should be evaluated

3    under an objective standard.  *See, e.g.*, *Allstate Ins. Co. v. Brown*, 16 F.3d 222, 225–26 (7th Cir.

4    1994) (criminal acts exclusion is unambiguous and provides an objective standard); *Allstate Ins.*

5    *Co. v. Cruse*, 734 F. Supp. 1574, 1581 (M.D. Fla. 1989) (intentional or criminal acts exclusion

6    requires an objective standard); *Allstate Ins. Co. v. S.L.*, 704 F. Supp. 1059, 1060 (S.D. Fla. 1989),

7    *aff'd*, 896 F.2d 558 (11th Cir. 1990) (exclusion unambiguously requires a reasonable person

8    standard); *Allstate Ins. Co. v. Travers,* 703 F. Supp. 911, 915 (N.D. Fla. 1988) (exclusion

9    incorporates an objective test); *Bruttig*, 2006 WL 3248393, at *4; *Allstate Ins. Co. v. Foster,* 693

10   F. Supp. 886, 888 (D. Nev. 1988) (exclusion is unambiguous and provides an objective standard);

11   *Allstate Ins. Co. v. Sowers*, 776 P.2d 1322, 1323 (Or. Ct. App. 1989) (court objectively approaches

12   exclusion's reasonably expected standard).  Thus, the Court applies an objective standard to

13   determine whether death may reasonably be expected to result from Mariani's acts.

14              Decisions in other jurisdictions are helpful in this regard.  *See, e.g.*, *Hooper v.*

15   *Allstate Ins. Co.*, 571 So. 2d 1001, 1003 (Ala. 1990); *Peasley*, 932 P.2d at 1246.  In *Hooper*, a man

16   was drinking and handling a gun in preparation for a hunting trip.  571 So. 2d at 1002.  While the

17   man was handling the gun, it accidentally misfired, shooting his friend in the face.  *Id.*  The

18   shooter pled guilty to second degree assault.  *Id.*  Evaluating an almost identical exclusion, *Hooper*

19   held that the insured shooter was excluded from coverage because the victim's injuries might

20   reasonably be expected to result from the shooter's unintentional criminal acts.  *Id.* at 1003.

21              Similarly, in *Peasley,* a man shot a female guest in his home.  932 P.2d at 1246.

22   The parties agreed that the shooting was accidental, however the local prosecutor brought charges

23   after neighbors reported hearing the two arguing in the house just before the shooting.  *Id.*  The

24   man eventually pled guilty to second degree reckless endangerment.  *Id.*  The man had an Allstate

25   homeowners policy with language almost identical to the instant Policy.  *Id.* at 1247.  The *Peasley*

26   //

7

AO 72
(Rev. 8/82)

1   court reasoned that by definition of the crime to which the man pled guilty, the injuries were

2   reasonably expected to result from the reckless act.  *Id.* at 1250.

3          Accordingly, the Court finds that Gittings' injuries are a reasonably expected result

4   of Mariani's criminal act.  Specifically, the injuries resulted from the criminal act of involuntary

5   manslaughter, brought about by unlawfully hunting rabbits in the desert, directing the shotgun

6   outside the motor vehicle without activating the safety, and discharging the shotgun inside the

7   vehicle.  (Dkt. #15, Allstate's Mot. Ex. A-1 at 1–2.)  Thus, the Court grants Allstate's Motion for

8   Summary Judgment.

9   **III.  Cooke and Linden Gittings' Countermotion for Summary Judgment**

10         In their Countermotion for Summary Judgment, Cooke and Linden Gittings rely on

11   a subjective analysis of the Exclusion.  Cooke and Linden Gittings cite *Allstate Ins. Co. v.*

12   *McCarn*, 683 N.W.2d 656 (Mich. 2004), for support.  As previously explained, the Court rejects

13   the subjective analysis and follows the majority of jurisdictions which read the Exclusion to

14   unambiguously require an objective analysis.  Thus, the Court denies Cooke and Linden Gittings'

15   Countermotion for Summary Judgment.

16                                          **CONCLUSION**

17         Accordingly, and for good cause appearing,

18         IT IS HEREBY ORDERED that Plaintiff Allstate's Motion for Summary Judgment

19   (#15) is GRANTED.

20         IT IS FURTHER ORDERED that Defendants Cooke and Linden Gittings'

21   Countermotion for Summary Judgment (#19) is DENIED.

22

23         Dated: August 8, 2008.

24

25                                          _____

26                                          **ROGER L. HUNT**
                                            **Chief United States District Judge**

AO 72
(Rev. 8/82)